**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION**

| | | |
|---|---|---|
| **Camil Kreit, et al.,** | § | |
| | § | |
| **Appellants,** | § | |
| | § | **Civil Action H-22-1408** |
| **versus** | § | |
| | § | |
| **Claro Group, LLC, et al.,** | § | |
| | § | |
| **Appellees** | § | |

---

| | | |
|---|---|---|
| **In re** | § | **Bankruptcy 14-34974** |
| **Cleveland Imaging & Surgical** | § | |
| **Hospital, L.L.C.,** | § | |
| | § | |
| **Debtor** | § | |
| | § | |

## APPELLANTS' BRIEF

**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:**

**COME NOW**, appellants Azhar Mahmood Chaudhary, Camil Kreit, MD, and Samir Kreit, MD, and file this brief in support of their appeal against sanctions assessed by the bankruptcy court, and respectfully state as follows:

### STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.   Did the Bankruptcy Court abuse its discretion in sanctioning appellants on a Rule 9011 motion without notice affording the appellants opportunity of notice and hearing?

II.  Whether Appellants engaged in sanctionable conduct under Rule 9011(b)(2) by advancing claims, arguments, defenses, and other legal contentions warranted under existing law or by nonfrivolous arguments for extension, modification, or reversal of existing law or the establishment of new law?

III. Whether Appellants engaged in sanctionable conduct as prescribed under Rule 9011(b)(2) by presentment of a claim for the first time that CISH Acquisition, LLC never acquired legal title of the debtor hospital's property?

IV.    Whether Appellants engaged in sanctionable conduct under Rule 9011 by filing pleadings and motions, asserting, and arguing, that existing appellate authority recognizes Rule 60(d)(3) as a mechanism to overcome res judicata when there is fraud on the court?

V.    Whether Appellants engaged in sanctionable conduct under Rule 9011(b)(3) when the Appellant, Mr. Chaudhary, conducted an objectively reasonable investigation into his clients' claims before he signed and filed pleadings?

VI.    Appellants were improperly sanctioned under Rule 9011 because the evidence supports that Appellants filed for proper purposes.

VII.    Was Okin Adams a proper property to invoke sanctions and were sanctions properly granted to Okin Adams when there had been no prior claims against Okin Adams, no hearing on the conduct alleged of Okin Adams and Appellants documentary evidence clearly established the conduct alleged in Court's own records?

## STATEMENT OF THE CASE

This case has a long and complex history. The most frequent argument made in this case, whenever outrageous conduct or shocking facts are discovered and brought to the Court's attention, is that such conduct at some point earlier in the long litigation of the case was suspected, and since it could not be proved then, the Court therefore should not consider the suspect conduct again, regardless of new evidence.

The Federal procedure provides a mechanism to vacate a judgment for fraud on the Court. Appellants file this brief to document the uncontroverted evidence and authorities that served as the basis for the motion to show the Court that the underlying motion was not frivolous or without merit, and extensive due diligence conducted by appellants' counsel before filing the motion does not warrant the sanctions and penalties imposed.

Of particular concern is the fact that the Bankruptcy Court decided that sanctions were warranted without a hearing on the motion or giving Appellants an opportunity develop and present their evidence. That act alone is an abuse of discretion under precedent set by Fifth Circuit. "We find that imposing Rule 11(c)(1)(B) sanctions without notice, and hearing would constitute an abuse of discretion by the district court" *Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir. 1999)

The undersigned counsel for appellants filed his notice of appearance in this case on December 04, 2020. However, the core bankruptcy case was originally filed on September 4, 2014 by Douglas Brickley, the state appointed Receiver. By the time undersigned counsel became engaged in this case, it had already been heavily litigated, evidenced by the docket which includes pleadings, hearings, and many rulings by various courts, which led to a vexing set of outcomes:

a. Appointment of a state court receiver with full powers of the board, as a constructive receiver in violation of Section 105(b) of Bankruptcy Code;

b. The bankruptcy court's appointment of the state court appointed receiver as the debtor-in-possession;

c. Motions for sanctions practice to discourage and foreclose any claims or criminal complaints by creditors or parties in interest against perpetrators that were eventually found guilty of criminal conduct and incarcerated (Cause No H-17-290-03);

d. Appointment of an interested party with a vested interest (that had personally billed over $274,104.00 for his services as an accountant, see ECF 624, pg. 15) as a trustee in violation of Section 1104(c) of the Bankruptcy Code, which requires that the appointment of a Trustee be made after consultation with parties in interest and that the person appointed be disinterested;

e. Sale of the debtor hospital's principal asset to an entity controlled by its insiders, who were accused of stealing millions from insurance companies (and eventually admitted that as part of an agreed judgement), and where the same insider's family members have been not only indicted, but convicted and incarcerated for insurance fraud (Cause No 4:17-cr-00290), and indicted on additional fraud using the debtor's hospital as a means of committing the fraud (Cause No Case 4:18-cr-00279);

f. A trustee of an expired trust that wrongfully continued to assert his exclusive right to bring claims on behalf of the debtor, sought and obtained sanctions against appellants, years after the trust expired.

In short, the debtor hospital, which was maneuvered into a receivership and then bankruptcy by its own officers and directors that locked-out other owners and directors. The debtor hospital was drained of its funds through fraudulent transfers and insurance fraud and eventually ended up in the hands of the very same people found guilty of using it to commit insurance fraud (*See* Cause No 4:12-CV-02451). Moreover, the trustee, shockingly, settled all claims and causes of action against the perpetrators of the fraud, the very people that stole the money, amounting to tens of millions of dollars, for a mere $300,000.00.

Upon a thorough investigation and diligent research, appellants' counsel concluded that an egregious fraud on the Court had been perpetrated, which necessitated the filing of subject motion seeking vacatur of the sale order of the debtor hospital's assets and modification of the confirmation order. Incidentally, the Honorable Judge Jeff Bohm who presided over the debtor's bankruptcy case before the Honorable Judge Marvin Isgur and was aware of evidence presciently predicted that such misconduct on part of the parties accused in the subject motion would ultimately be addressed in the future (ECF Doc. No. 372, 4:10-20, and Exhibit 01).

It is worth noting that the Bankruptcy Court recently ruled that the trust expired on December 31, 2018, and a motion to vacate the orders obtained by the trustee based on pleadings filed by the trustee after the trust expired, and after he lost standing, is still pending before the Bankruptcy Court. Appellants respectfully request that the Court take notice that for full three years after the trust expired, trustee continued to assert that he had the exclusive right to claims of the debtor (including claims asserted in this very Court), as they are indeed continuation of a pattern of behavior and misrepresentations claimed by Appellants in the subject motion.

On 9/16/2021, appellants filed the subject Rule 60(d)(3) motion (ECF Doc. No. 1137) requesting that the bankruptcy court vacate its orders: (A)(I) Approving Asset Purchase agreement with CISH Acquisition, LLC; (II) Authorizing the Sale of Assets Free and Clear of All Lines, Claims, Encumbrances, and Interests to CISH acquisition, LLC; and (III) Granting Related Relief, and (B) Resolving Credit Bid Motions (ECF Doc. No. 352); and Confirming Debtor's Third Amended Plan of Liquidation (ECF Doc. No. 567).

While appellants and their counsel acknowledge that Rule 60(d)(3) presents a high mountain, particularly when fellow members of the community are implicated, this Court should not ignore the documentary evidence, and the threat of sanctions should not be an impediment to

open courts, a fundamental tenet of justice. In the appellants' 60(d)(3) motion, they presented what appellants believed to be clear and convincing evidence that the aforementioned orders were obtained by actors who had committed fraud upon the Bankruptcy Court as follows:

a. By creating a fictional insolvency to persuade the bankruptcy court that the debtor required protection under Chapter 11 of the Bankruptcy Code, escaping all accounting and supervision in the state district court that originally appointed the Receiver;
b. By misrepresenting ownership of the Iberia Bank Promissory Note ("Iberia Bank Note," "Note," or the "Iberia Bank Indebtedness") against the debtor, which was used to credit bid for the purchase of debtor's assets; and
c. By misusing AETNA claims against the Debtor to gain approval of the third amended bankruptcy plan.

Further, appellants presented documentary evidence in their motion that Dr. Ravi Moparty ("Moparty") and Dr. Rafael De La Flor-Weiss ("Delaflor"), along with other actors, and co-conspirators committed insurance fraud, and used the Bankruptcy Court to cover and ameliorate the fruits of their criminal enterprise, and that CISH Acquisition, LLC ("CISH"), despite representations to the Court, was neither an owner, nor an assignee of the Iberia Bank Note, which was used to seek the bankruptcy court's approval to purchase the debtor's assets.

In addition to showing that Moparty and Delaflor's fraudulent conduct was so egregious that any judicial officer or administrator of justice should be shocked and dismayed as it resulted in a gross miscarriage of justice, leading to the very same bad actors owning the debtor's assets. Ultimately, appellants reasonably believed that their investigation into the facts strongly supported averments in their motion and there is overwhelming proof that the perpetrators orchestrated, perpetuated, and systematically executed several complex schemes constituting fraud upon the bankruptcy court. It was only after diligent research and investigation into the fraudulent scheme did appellants draft and file their Rule 60(d)(3) motion with the bankruptcy court. The motion contained not only statements regarding the perpetrators' fraud, but also legal justification and attachments of convincing documentary evidence as to the allegations contained therein.

After the bankruptcy court considered the motion, the bankruptcy court not only implicitly rejected appellants' arguments, but on 3/7/2022 issued a memorandum opinion of Rule 9011 sanctions against appellants and their counsel without any hearing on the motion, leaving only the nature and amount of sanctions as something to be decided at a future hearing, which occurred on 4/11/2022. Appellants assert that this was an abuse of discretion under prevailing authorities and assert error in all sanctions issued against them. Appellants urge the Court to issue a mandate to allow them to develop and present evidence on the underlying motion at a hearing.

## SUMMARY OF ARGUMENT

Appellants respectfully state that that the bankruptcy court erred when it imposed sanctions without affording the appellants opportunity pf notice and a hearing. Consequently, fundamental due process was lost, because the appellants were deprived of the opportunity to present evidence in support of the motion, subject of the sanctions; therefore, the bankruptcy court abused its discretion when it assessed sanctions against the appellants. "[I]mposing -Rule 11[] sanctions without notice and hearing would constitute an abuse of discretion by the [*379] district court". *Goldin v. Bartholow,* 166 F.3d 710, 722 (5th Cir. 1999). *Marlin v. Moody Nat'l Bank NA*, 533 F.3d 374, 378-79 (5th Cir. 2008). "We find that imposing Rule 11(c)(1)(B) sanctions without notice, and hearing would constitute an abuse of discretion by the district court" *Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir. 1999).

Appellants did not engage in sanctionable conduct under Rule 9011(b)(2) by advancing claims, arguments, defenses, and other legal contentions warranted under existing law and made nonfrivolous arguments for extension, modification, or reversal of existing law or the establishment of new law, when they sought vacatur of the two orders subject of the motion. Appellants counsel engaged in a diligent and objectively reasonable inquiry into the facts and the law when he put

forward the proposition that CISH Acquisition, LLC ("CISH"), the entity that purchased debtor's assets, never acquired legal title to the note used for credit bid. This argument was presented to the bankruptcy court for the first time in appellants' motion, and had never been considered before by the Court; therefore, it couldn't be subject to the doctrine of res judicata. Appellants' remaining arguments on manipulation of the bankruptcy schedules and the misapplication of AETNA claims for approval of the plan had, similarly, never been subject of any decision by the bankruptcy court.

Appellants also reasonably believed their stance regarding § 1144 was justified recent U.S. Supreme Court decision in *Rotiske v. Klemm*, No. 18-328 (U.S.), where the Supreme Court declined to ultimately decide whether certain equitable principles justified the tolling of a statutory limitation period of the kind expressed in § 1144 of the Bankruptcy Code in exceptional cases. Appellants believed that the Court's decision to refuse to dispose of the issue fully, effectively left the door open for consideration of certain perpetrated frauds against the Court (as opposed to general cause of action of fraud). Thus, a bankruptcy court could, when presented with such an ostentatious and complex showing of fraud against the court as in the present case, could and should vacate an order over 180 days old, when it still had plenary power and ongoing jurisdiction in the case. Other cases where the Supreme Court declined to define fraud with precision on the theory that the court would not want to create a blueprint for fraudsters to follow, lend credence to the fact that under certain circumstances, law that created a safe haven for those that commit egregious fraud should be changed (*Husky Int'l Electronics, Inc. v. Ritz*).

Okin Adams was erroneously granted sanctions against the appellants by the bankruptcy court, even though it was not a party to the case, thus no claim against Okin Adams could possibly have been subject to res judicata. The only conduct appellants accused Okin Adams of was that they, as counsels to receiver, misapplied the AETNA claim for confirming the plan, and that they wrongfully

asserted trustee's exclusive right to litigate all claims of the debtor long after the trust expired and long after the trustee had lost authority under the terms of the trust. Both of these actions are well documented in the courts records, and can't possibly be used to impose sanctions under Rule 11, as they are not frivolous; rather, they are true and had never been adjudicated in any manner at all.

Appellants did not engage in sanctionable conduct under Rule 9011(b)(3) when appellants' counsel, Mr. Chaudhary, signed the motion after he diligently conducted an objectively reasonable investigation. Thus, contrary to the conclusion reached by the bankruptcy court, the three principal arguments advanced by appellants in their Rule 60(d)(3) motion were not frivolous or barred by res judicata, and presented a compelling case that a fraud had been perpetrated on the court. Further, appellants did not engage in sanctionable conduct under Rule 9011(b)(3), because their counsel, conducted an objectively reasonable investigation into his clients' claims before he signed and filed pleadings, evidenced by the detailed declaration he filed in the bankruptcy court (ECF Doc. No. 1179-1).

## STANDARD OF REVIEW

"Appellate courts must review the selection of a sanction under an abuse-of-discretion standard, since, in directing the district court to impose an "appropriate" sanction, Rule 11 itself indicates that that court is empowered to exercise its discretion. Moreover, in the absence of any language in the Rule to the contrary, courts should adhere to their usual practice of reviewing the district court's findings of fact under a deferential standard. In the present context, the abuse-of-discretion and clearly erroneous standards are indistinguishable: a court of appeals would be justified in concluding that a district court had abused its discretion in making a factual finding only if the finding were clearly erroneous. Furthermore, the court of appeals must defer to the district court's legal conclusions in Rule 11 proceedings, since those conclusions are rooted in

factual determinations, rather than purely legal inquiries, and the district court, familiar with the issues and litigants, is better situated to marshal the pertinent facts and apply the necessary fact-dependent legal standard. If the district court based its conclusion on an erroneous view of the law, the appellate court would be justified in concluding that it had abused its discretion." *Cooter & Gell v. Hartmarx*, 496 U.S. 384 (1990).

When a district court or circuit court reviews a decision of a bankruptcy court, it reviews the factual findings for clear error and its legal conclusions de novo. Fed. R. Bankr. P. 8013; *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir. 1994); *Matter of Rigdon*, 36 F.3d 1375 (7th Cir. 1994) (proper construction of a bankruptcy statute is a legal issue, subject to de novo review); *In re Investment Bankers, Inc.*, 4 F.3d 1556, 1560 (10th Cir. 1993), *cert. denied*, 114 S. Ct. 1061 (1994); *Matter of Wiredyne*, 3 F.3d 1125, 1126 (7th Cir. 1993); *In re Century Boat Co.*, 986 F.2d 154, 156 (6th Cir. 1993); *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992); *In re Chase & Sanborn Corp.*, 904 F.2d 588 (11th Cir. 1990). A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364 (1948)). *Id.*

## ARGUMENT

### A. Bankruptcy Court abused its discretion when it awarded sanctions against appellants without affording them the opportunity of notice and hearing.

After the bankruptcy court reviewed the 60(d)(3) motion, it issued a memorandum opinion (ECF Doc. No. 1158) of Rule 9011 sanctions against appellants and their counsel, without a hearing on the motion. The opinion made it clear that sanctions were warranted, leaving open only the nature and amount of sanctions to be decided at a future hearing, which occurred on 4/11/2022. Appellants assert that this was an abuse of discretion under prevailing authorities and assert error

in all sanctions issued against them. "[I]mposing -Rule 11[] sanctions without notice and hearing would constitute an abuse of discretion by the [*379] district court". *Goldin v. Bartholow,* 166 F.3d 710, 722 (5th Cir. 1999). *Marlin v. Moody Nat'l Bank NA*, 533 F.3d 374, 378-79 (5th Cir. 2008)."We find that imposing Rule 11(c)(1)(B) sanctions without notice, and hearing would constitute an abuse of discretion by the district court". *Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir. 1999).

In *Goldin*, the Fifth Circuit was explicit is stating that notice and hearing are essential precursor to any sanctions, which aligns with fundamental due process rights. The arguments made here could never be made in the bankruptcy court, because appellants were given no opportunity to present their evidence (or develop evidence through discovery) to demonstrate the merits of their motion before the court decided that sanctions were forthcoming. It left open only the nature and amount of sanctions. While the court conceded some of the points raised by appellants (on manipulation of bankruptcy schedules, on the possibility that Mr. Mercer did not inform the Court of a material adverse ruling that 333rd District Court had ruled that CISH never acquired legal title to the note), it never had the opportunity to consider Appellants evidence and arguments that would have established that:

a. Court lamented that appellants cite no authority that Mr. Mercer perpetrated fraud on the court when he failed to disclose the implications of state court ruling (Memorandum Opinion, ECF 1158, pg. 10, Footnote 5), Appellants had cited case law in the motion that required counsel to disclose material facts, and omission of material facts was fraud on the Court. "Furthermore, when an officer of the court fails to correct a misrepresentation or retract false evidence submitted to the court, it may also constitute fraud on the court. *In re McCarthy*, 623 N.E.2d 473, 477 (Mass. 1993). "(ECF 1137, pg. 17, Para 34);

b. Court did not appreciate that state law was determinative on the issue of ownership of the note, and the state court had ruled subsequently that CISH never acquired legal title to the note;

c. Court misconstrued the pleadings cited by appellants from the 333rd District Court when it characterized the three traditional motions for summary judgement as a "No Evidence Motion for Summary Judgment" (ECF Doc. No. 1158, pg. 9), and appellants could not inform the Court of the predicate requirements of a motion for traditional motion for summary judgement (which requires specific grounds to be asserted) and inform the Court

on the specific grounds asserted in Defendant Aggarwal's motion (ECF 1113-29, pg. 37 of 49) that claimed that CISH did not own the note;

d. Court misconstrued appellants' arguments on misuse of AETNA claims. Appellants did not assert that AETNA's claims were invalid, but rather the large unliquidated claim had to be estimated with a 502(c) estimation and a hearing, which never occurred. It's the intentional act of assigning the entire $8.4 Million AETNA claim, which was both disputed and unliquidated against the debtor, when there were stipulations (ECF 1137, Exhibit 33) by all defendants that assigned mere $23,000 of that claim to debtor hospital, and those stipulations had been shared with attorneys representing the debtor, and the Receiver, that Appellants averred rose to the level of fraud on the court when combined together with all the other actions, as a complex pattern of fraud on the Court. It was further compounded, and confirmed when all defendants other than the debtor, admitted to fraud, and in the end not a single penny of that claim was charged to the debtor, and once again, that material fact was never brought to the attention of the Court;

e. Court also misconstrued Appellant's statements as they related to IBERIA and instead took appellee's characterization of those statement.

## B. Mr. Chaudhary pursued claims supported by existing law and for which there is reasonable justification for extending existing law.

The bankruptcy court found sanctions were appropriate against Appellants for putting forth a 60(d)(3) motion that was foreclosed by law. Yet, Appellants motion more than provided a reasonable justification under existing law to support their assertation that vacatur and/or modifications of the Court's orders were proper under Rule 60(d)(3). Specifically, Appellants left no question as to their legal support for their belief that:

a. There is no limitation period applicable to 60(d)(3) or fraud on the court. *See Valerie v. Boise Cascade Corp.* 80 F.R.D. 626, 640 n.10 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir. 1981);

b. Rule 60(d)(3) operates as a saving clause to set aside judgment for egregious misconduct. *See Rozier v. Ford Motor Co*., 573 F.2d 1332, 1338 (5th Cir. 1978); *Jackson v. Thaler*, 348 F. App'x 29, 34 (5th Cir. 2009); *Wilson v. Johns-Manville Sales Corp.*, 873 F.2d 869, 872 (5th Cir. 1989);

c. Rule 60(d)(3) is a codification of the Court's inherent power to investigate whether a judgment was obtained by fraud." *Universal Oil Products Co., v. Root Fe. Co*., 328 U.S. 575, 580 (1946); *see also United States v. Eatate of Stonehill*, 660 F.3d 415, 443. *Also*, Rule 60 does not limit 60(d)(3) court's power to set aside judgment. *Valerie* supra at 645;

d. The elements for an independent action in equity under Rule 60(d)(3). *Buckenberger v. Nielsen*, No. U.S. Dist. Lexis 113945, at *24 (e.D. La. July 8, 2015).

e. A fraudulent scheme upon the court includes a party either hiding or withhold key facts. *United States v. Estate of Stonehill*, 660 F.3d 415, 444-45 (9th Cir. 2011).

f. A fraud on the court most often includes acts perpetrated by an officer of the court such that the court cannot perform its function as a neutral/impartial arbiter. *Martina Theatre Corp v. Schine Chain Theater, Inc.*, 278 F.2d 798, 801 (2d Cir. 1960); *Bulloch v. United States,* 721 F.2d 713, 718 (10th Cir. 1983); *Robinson v. Atiengesellschaft*, 56 F.3d 1259, 1266 (10th Cir. 1995);

g. A scheme can include a party's acts that are responsible for undermining the integrity of the judicial process where "the integrity of the judicial process has been fraudulently subverted," because it chose to recklessly present misleading or false evidence to the court and the court's judgment was influenced. *Haze-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245-246 (1944) (creating the standard for fraud on the court);

h. That a fraud-on-the -court rule should be characterized by flexibility and an ability to meet new situations demanding equitable intervention." *Estate of Adams v. Fallini,* No. CV 24539 (Nev. 5th Dist. Ct. Aug. 6, 2014) at 2;

i. That misrepresenting liabilities on real property, including a co-conspirator, and preparing fraudulent loan documents established fraud on the court. In re Cardwell, No. 09-43121, 2017 WL 2304220, at *5-*6 (Bankr. E.D. Tex. May 25, 2017); *See also In re Clinton Street Foods* Corp., 254 B.R. 523 (Bankr. S.D.N.Y. 2000);

j. Where an attorney neglects that duty and obtains a judgment based on conduct that actively defrauds the court, such judgment may be attacked and subsequently overturned as fraud on the court. *H.K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1119 (6th Cir. 1976); and

k. Dozens of more cases on several different contentions that served as the basis of the three principal arguments advanced in support of fraud on the court.

Appellants also relied upon recent case of *Ehrenberg v. Roussos* (*In Re Roussos*), 541 B.R. 721 (Bankr. C.D. 2015) as compelling authority that in cases of fraud, a sale order may be reversed even after a decade. Regardless of the Bankruptcy court's ultimate finding of fraud, the motion demonstrates well-thought-out legal contentions supported by law and evidence. The imposition of sanctions is especially curious in light of the affidavit submitted by Mr. Chaudhary, where he stated that Appellants reasonably inquired into the law and believed that a bankruptcy court, when presented with such an ostentatious and complex showing of fraud against the court as in the present case, could and should vacate its previous orders. Therefore, Appellants maintain that it was an error for the Bankruptcy Court to assert Rule 9011 sanctions against Appellants for failing to make a reasonable inquiry into the legal circumstances.

Notably, appellants cited the recent case of *Ehrenberg v. Roussos* (*In Re Roussos*), 541 B.R. 721 (Bankr. C.D. 2015) (ECF Doc. No. 1137, pg. 37, Para 83) as compelling authority that in cases of fraud, a sale order may be reversed even after a decade. Of particular concern to the court has been Appellant's pleading seeking vacatur of the confirmation order, as it would appear to violate § 1144 of the Bankruptcy Code. Appellants believed their stance was justified by changing law which should be fully adopted and/or extended. Specifically, Appellants cited the U.S. Supreme Court decision in *Rotiske v. Klemm*, No. 18-328 (U.S.), where the Supreme Court declined to ultimately decide whether certain equitable principles justified the tolling of a statutory limitation period of the kind expressed in § 1144 of the Bankruptcy Code in exceptional cases like those involving not just fraud, but fraud on the court. Sanctions were improper especially in light the affidavit submitted by appellant Chaudhary, he reasonably believed that the Court failure to dispose of the issue fully, effectively left the door open for consideration of certain perpetrated frauds against the Court (as opposed to general cause of action of fraud). Thus, a bankruptcy court could, when presented with such an ostentatious and complex showing of fraud against the court as in the present case, could and should vacate an order over 180 days old, when it still had plenary power and ongoing jurisdiction in the case.

Appellants contend that there is a reasonable nonfrivolous argument for the extension, modification, or reversal of existing law as embodied in 11 U.S.C. § 1144 or the establishment of new law, in this limited circumstance, not be subject to the 180 days limitation imposed under 11 U.S.C. § 1144.

**C. Appellants' claim that CISH commenced a fraud upon the court by failing to admit that CISH never acquired title to the note was only presented to the court for the first time in Appellants' motion.**

The bankruptcy court lamented Appellants motion for explaining the complex web of fraud that plagued the dispute between the parties. However, not only had the court had never heard a claim regarding CISH's failure to own a note which was subject to litigation, but the court appeared not to appreciate that Appellants 60(d) motion was not raised to assert a general allegation of fraud against CISH, but rather to show that CISH engaged in fraud on the court by not asserting it was legal owner of the note when it was not, and failed to make the court aware that fact even after a state district court ruled that CISH was not a legal owner of the note. This was not just a matter of Appellant's opinion. The Texas District Court of 333rd District has ruled on this specific issue, and as the title of the note is a state law issue, it is dispositive in this case, judgement is final, was not appealed, and is now res judicata in this case.

The court has never been presented with the argument that CISH never acquired legal title to the note, and neither did Lowery Donkey Fund, the alleged assignor of right to credit bid on the note. This issue is not academic, it goes to the heart of the sale of the hospital and the credit bid

a. Appellee's, in their response to 60(d)(3) motion (ECF Doc. No. 1147) try to overcome this issue by arguing that if CISH did not own the note, why no one (else) is claiming the note or demanding the money owed. As seductive as that argument appears, it is not dispositive of the question, did CISH own the legal right to use the note to make a credit bid for the hospital. Even if CISH acquired the note months or years later (and it appears not to ever have, but without discovery that question cannot be fully resolved), the documented fact, eventually ruled upon by 333rd District Court of Texas, that CISH never acquired legal title to the note used for making the credit bid for the hospital is a critical element of fraud on the court, executed with complicity of CISH's counsel (and also its corporate representative in the 333rd District Court). The fact that counsel never informed the Bankruptcy Court of that material adverse ruling, fits squarely into the criteria for fraud on the court as defined by *In Re McCarthy*:
"…Furthermore, when an officer of the court fails to correct a misrepresentation or retract false evidence submitted to the court, it may also constitute fraud on the court. *In re McCarthy*, 623 N.E.2d 473, 477 (Mass. 1993).
b. Contrary to assertions of Appellee CISH, dispositive issue is not if money was eventually paid, instead, the issue is, did CISH have the legal right to make the credit bid when it did, locking out other bidders attempting to acquire the debtor's assets.
c. Even if "CISH" had finally managed to acquire the note 6 months later, when the CleveTex assigned the note to it, that does not legitimize the transaction or undo the fraud, especially since, according to the ruling of the 333rd District Court of Texas (and the underlying grounds

of the motions it granted), neither CleveTex nor its predecessor in the note Lowrey Donkey Fund ever acquired legal title to the note. The fact that Iberia bank got paid, is not dispositive of who had the legal claim to bid on the note.

d. The fraud is further evidenced by the documented plan (attached in the body of the motion) that laid out specific details of what was to transpire, months before it actually happened by De La Flor Weiss that claimed to have paid IBERIA already on June 18, 2015, and claimed to already own the land, building on that date, whereas,,

    i. In court, bid procedures were still being contested, a different buyer seemed to be prevailing, and sale was not approved until Aug 30, 2015, and

    ii. Claimed assignment of note to CISH acquisition on which credit bid was based did not take place until June 30, 205 (Exhibit 38).

    iii. It is also worth noting that IBERIA apparently assigned the note twice, to different entities, and the second assignment apparently occurred days before it actually claims to have been paid

Also ignored by the Bankruptcy court was the fact that Texas Law requires Motion for Summary Judgment , "MSJ" to raise specific grounds on which motion is based. MSJ granted by the 333rd District Court asserted CISH was not owner of the note, and that was the principal argument made in the 60(d)(3) motion. Texas Law is that is MSJ is granted on the grounds asserted, then the grounds asserted are deemed (even without a findings of fact rulings of law. In addition to a No Evidence Motion for). Summary Judgement, two addition motions for summary judgements were granted by the 333rd District Court along with a plea to jurisdiction;

**Plea to Jurisdiction granted:** Grounds asserted in Plea included that CISH, Acquisition, LLC , "CISH" had no STANDING as it was not a holder of note. Plea was granted. Specifically, the "Traditional Motion for Summary Judgement and Plea to Jurisdiction" from Ajay Aggarwal asserted the claims that CISH did not own the note, and it was granted:

<div style="border:1px solid black; text-align:center">

**DEFENDANTS AJAY AGGARWAL, INDIVIDUALLY,
AND AJAY AGGARWAL, M.D., P.A.'S PLEA TO
JURISDICTION AND MOTION FOR SUMMARY JUDGMENT**

</div>

The principal argument for plea was framed as follows:

# IV.
## ARGUMENT AND AUTHORITIES

### A. PLAINTIFF LACKS STANDING TO ASSERT ANY CLAIMS BECAUSE IT IS NOT THE HOLDER OF THE PROMISSORY NOTES OR THE PERSONAL GUARANTIES.

ECF 1113-29, pg. 37 of 49.

> (iii) <u>CISH never acquired the notes; therefore, it cannot bring any claims against Aggarwal Defendants.</u>
>
> 21. CISH never properly acquired the notes. CISH cannot point to any document, agreement, or assignment of any notes. For a note to be properly assigned and transferred, the transfer document must be affixed to the note. In *Estrada v. River Oaks Bank & Trust Co.*, 550 S.W.2d 719, 725 (Tex. Civ. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.), the Houston Court of Appeals held that:

*See*, ECF Nos. 1113-29, pg. 41 of 49.

Ownership of the note is governed by state law, and the determination of the state court's final judgement was never given the deference it deserved.

### D. Appellants did not engage in sanctionable conduct under Rule 9011 by presenting a claim that was alleged to have been previously litigated and subject to res judicata.

#### a. Appellants' claim that perpetrators manipulated bankruptcy schedules to engineer a fictional insolvency

The bankruptcy court in its Memorandum Opinion appears to accept the contention that bankruptcy schedules were manipulated to understate the assets and overstate the liabilities (by millions of dollars), at least partially, but states that manipulating bankruptcy schedules hardly rises to the level of fraud on the Court.

Appellants contend that, bankruptcy schedules, are the essence of a bankruptcy case, and manipulating the foundational documents in indeed fraud on the court, no different than hiding assets or hiding fraudulent transfers of the kind ruled upon in *Ehrenberg* case Further, it was not just an isolated act, but part of an orchestrated series of acts that collectively impaired the judicial

machinery from fulfilling its role as the impartial arbiter of the dispute. Appellants presented documentary evidence of the manipulation, which is made more egregious by the fact that a significant portion of those fictional liabilities belonged to parties that admitted to fraud, sought to acquire the hospital, have been accused and convicted of siphoning millions of dollars from the debtor hospital, and finally ended up acquiring the very same hospital for a pittance, that too paid from money they admitted stolen from the very hospital they purchased.

### b. Unliquidated AETNA Claim was used to improperly approve the confirmation plan.

The bankruptcy court misconstrued appellants arguments regarding the AETNA claim (which was decided by the District Court – Cause No 4:12:CV-02451). Appellants in their motion contended that as part of the fraud on the Court, an AETNA claim of approximately 8.5 Million was used to approve the confirmation plan, inappropriately, when in reality, Debtor owed nothing to AETNA, and there were stipulation in place by all defendants that put the amount potentially allocable to debtor at mere $26,000. appellants did not claim that AETNA claim was invalid, , appellants' claim was that the unliquidated claim needed to be allowed with a 502(c) estimation which never occurred. Appellants considered this to be particularly egregious since in the final AETNA judgement, debtor was found to owe nothing, and the Receiver (acting as the debtor in possession) and its counsels were aware of the stipulations and the contested nature of the AETNA's claims. Additional details highlighted in declaration from movant's counsel provide sufficient basis that there was sufficient evidence to form an objective good faith belief for the motion, and this claim had never been presented to the Court previously.

### c. Res Judicata does not apply in the present case.

The bankruptcy court appeared persuaded that 60(d)(3) is both untimely and subject to res judicata. However, appellants maintain that their 60(d)(3) is timely as there are no time limits on a 60(d)(3) motion and res judicata does not apply in the present case.

The federal rules contemplate several mechanisms to set aside a judgment. For example, Rule 60(b) permits litigants to file a motion to seek relief from a final judgment, order, or proceeding. Fed. R. Civ. P. 60(b). It lists several reasons that can support such a motion including "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). Subsection 60(b), however, has a one-year time limit. *Id. Meanwhile,* Rule 60(d)(3) does not limit a court's power to set aside a judgment for "fraud on the court." Fed. R. Civ. P. 60(b)(3). To show a fraud upon the court in a 60(d)(3) motion, "[I]t is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1337-38 (5th Cir. 1978). Fraud under Rule 60(d)(3) "embrace[s] . . . the species of fraud which does or attempts to defile the court itself." *Wilson v. Johns-Manville Sales Corp.,* 873 F.2d 869, 872 (5th Cir. 1989) (quotation omitted). *Jackson v. Thaler*, 348 F. App'x 29, 34 (5th Cir. 2009). A request for Rule 60(d)(3) relief is "not subject to any time limitation." *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1337-38 (5th Cir. 1978); (quoted in *Curtis v. Brunsting*, 860 F. App'x 332, 336 (5th Cir. 2021). Therefore, appellants motion was timely.

Res judicata does not bar an action on a 60(d)(3) motion. *Watts v. Pickney*, 752 F.2d 406, 410 (9th Cir. 1985), stands for the proposition that a Rule 60 action is not considered collateral attack under a res judicata analysis. In fact, the Fifth Circuit has held that res judicata may yield, even in cases that invoke 60(b)(3), which otherwise is limited to one year period for equitable relief. *Turner v. Pleasant*, 663 F.3d 770, 776 (5th Cir. 2011). Res judicata must at times yield to a

well-pled independent action in equity. *See, United States v. Beggerly*, 524 U.S. 38, 45-46, 118 S. Ct. 1862, 141 L. Ed. 2d 32 (1998). In order to prevent an independent action in equity from making null the limitations of the related Rule 60(b)(3) right to relief for one year after judgment due to fraud, the injustice to be remedied must be so severe as to overcome the purposes for the doctrine of res judicata. *Id*. at 47. The actions are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs." *See Chambers v. NASCO, Inc*., 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) (quotation marks and citation omitted). The Federal Rules thus preserved a court's power to hear an independent action to grant relief from a judgment. *See* Fed. R. Civ. P. 60(d)(1).

The res judicata issues taken by the bankruptcy court in the present case would have only applied, if 60(d)(3) had not been pleaded, and if the claims asserted had previously been ruled upon by a court of competent jurisdiction. Here, not only 60(d)(3) basis bypasses the res judicate, the claim that CISH did not own the note had never been presented, far less ruled upon by the Court.

**E. Appellants did not engage in sanctionable conduct under Rule 9011 when Appellants' counsel, Mr. Chaudhary, signed the subject motion after he conducted an objectively reasonable inquiry into the facts and law for vacating orders because of fraud on the Court. Mr. Chaudhary made an objectively reasonable inquiry into the factual circumstances of Appellants claims.**

Under Rule 9011, the conduct of a signatory to a pleading or motion is assessed objectively. *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 528 (5th Cir. 2016). A signatory violates Rule 9011(b)(2) by advancing claims or arguments lacking support in existing law, and for which no reasonable justification for extension of existing law is offered. *Collins v. Daniels*, 916 F.3d 1302, 1320 (10th Cir. 2019); *see also M2 Tech., Inc. v. M2 Software, Inc.*, 748 F. App'x 588, 590 (5th Cir. 2018) (affirming the imposition of sanctions on an attorney that presented claims

unsupported by existing law or nonfrivolous argument for the law's extension). *In re Clev. Imaging & Surgical Hosp., L.L.C.*, No. 14-34974, 2022 Bankr. LEXIS 599, at *7-8 (Bankr. S.D. Tex. Mar. 7, 2022).

In the present case, within a 20-page affidavit submitted to the Court (ECF Doc. No. 1179-1), Mr. Chaudhary explains not only the reasons he believed the motion to vacate and/or modify were legally viable, but Mr. Chaudhary also explains in excruciation detail the investigation and verification of factual allegations that he made before filing the subject motion with the Court. First, Mr. Chaudhary details that in addition to speaking with his clients and reviewing several e-mails that more than raises an eyebrow as to the fraud alleged in the subject motion (ECF Doc. No. 1190), he evaluated thousands of documents and hundreds of filings in the disputes among the parties in the following causes:

a.  2021-24685: 165th District Court Harris County, Texas, CPTM Case;
b.  4:12:CV-02451: Southern District Court, Aetna Case;
c.  2014-27766: 189th District Court Harris County, Texas Rayford Case;
d.  14-34974: Southern District Bankruptcy Court which this appeal arose from;
e.  2016-15816: 333rd District Court Harris County, Texas CISH Acquisition Case;
f.  4:18-cr-00279-1 Southern District Court, Criminal Case against Dayakar Moparty; and
g.  4:17-cr-00290-3 Southern District Court, Criminal Case against Dayakar Moparty.

(ECF Doc. No. 1179-1).

Next, appellants counsel explained how he went above and beyond to question and verify the claims made by his clients. Just to name a few things that Mr. Chaudhary justifiably relied on in addition to the statements made to him by his clients were:

a.  E-mails from his clients;
b.  a forensic audit;
c.  admissions from Ravi Moparty, Dayakar Moparty, Dr. Gorella, and Dr. Wise as to fraud;
d.  Inquiry from other professionals familiar with relevant complex processes;
e.  Affidavit from Mark Anderson;
f.  Testimony record of Ms. Kesterson;
g.  A myriad of documents and testimony from the Aetna and Rayford cases that were made by non-clients; and

    h.  Several other documents attached as evidence to support Appellants allegations in its 60(d)(3) motion.

(ECF Doc. No. 1179-1).

As explained in the declaration, the investigation and review of the sources of information above sufficiently corroborated to Mr. Chaudhary that the allegations of fraud made by Appellants had a justification in fact. (ECF Doc. No. 1179-1).

## F.  APPELLANTS WERE IMPROPERLY SANCTIONED UNDER RULE 9011 BECAUSE THE EVIDENCE SUPPORTS THAT APPELLANTS FILED FOR PROPER PURPOSES.

Rule 9011(b)(1), the party filing the paper certifies that to the best of their knowledge, formed after an inquiry reasonable under the circumstances, "it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." *In re Dernick*, Nos. 18-32417, 18-32494, 2020 Bankr. LEXIS 1345, at *22-23 (Bankr. S.D. Tex. May 22, 2020).

In the bankruptcy court's memorandum of opinion regarding its sanction order, the bankruptcy court cites a history of appeals taken in several cases by appellants, the majority before Mr. Chaudhary had entered the case on behalf of appellants, regarding several ancillary disputes between the parties.  The bankruptcy court makes unequivocally clear that the court is frustrated that this litigation has not come to final disposition. This frustration, however, does not justify the lamentations and sanctions against appellants' for bringing a 60(d) motion in good faith, nor does it signal a filing in bad faith.

Instead, the focus of the "improper purpose" clause is as to why the attorney filed the motion at issue and whether that issue falls under Rule 9011(b)(1)'s non-exclusive list of various improper purposes, such as harassment, causing unnecessary delay, or needlessly increasing the cost of litigation. *In re Saldana*, 531 B.R. 141, 165 (Bankr. N.D. Tex. 2015) (citing *Cadle Co. v.*

*Pratt* (*In re Pratt*), 524 F.3d 580, 586 n.19 (5th Cir. 2008)). However, in the present case, there is no evidence to support an objective finding that appellants set forth their motion for the purposes of harassment, delay, needlessly increasing the costs of litigation, or any other improper purpose. Appellants and their attorney zealously advocated and brought before the bankruptcy court, in good faith, a well thought out 60(d) motion rooted in fact and law.

To aid the bankruptcy court in its Rule 9011 analysis as to why Mr. Chaudhary filed the motion at issue, Mr. Chaudhary submitted to the Court an affidavit (Doc. 1190-1) where counsel clearly explains that:

a. Mr. Chaudhary filed the subject motion for no improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
b. Mr. Chaudhary used due diligence in investigating the claims, defenses, and other legal contentions in the subject motion;
c. Mr. Chaudhary based on his due diligence into the circumstances of the claim of the motion, he believed and still believes, that the claims, defenses, and legal contentions in the subject motion were warranted by either existing law or the establishment of new law; and
d. That based on his diligence, he believed and still believes that the allegations and other factual contentions are within the subject motion and had evidentiary support or, were likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Mr. Chaudhary's 20-page affidavit, as addressed above points out in vivid detail not only the good faith purpose for the filing of the motion, but the legal and factual basis for why the 60(d) motion was brought before the court. Therefore, the evidence did not suggest any filing by the appellants for an improper purpose, thus sanctions should not be affirmed against Appellants. Therefore, appellants were improperly sanctioned as there is no evidence that appellants filed for an improper purpose. Instead, appellants in their motion presented documentary evidence of a large volume of events and actions that established a concerted effort to perpetrate a pattern of fraud on the court, including documentation of the following facts:

a. A billing system server that contained critical information  was made to fail, just when it was needed to identify financial impropriety , and there are e-mails documenting the fact that failure was no accident, but a concerted effort to lock the management of Hospital out of its financial systems.

b. Assets were significantly underrepresented, claims were overrepresented by millions in some cases, only to magically disappear.  Liabilities were over represented.

c. Allonges were signed assigning notes that presumably were extinguished when used to credit bid for the hospital months after the sale occurred

d. The principal case that created the receivership which led to bankruptcy filing was dismissed for want of persecution

e. Taxes that had been paid by the bank itself as part of closing, were paid again by the bank for inexplicable reason

f. Bank that was unwilling to fund $700,000 to stave off the foreclosure, was willing to fund over 3 million to the same people that triggered its original default, AND, willing to sign assignments and allonges days before it actually apparently got paid .

g. Every attempt to surface the financial impropriety (that was eventually prosecuted by US Attorney's office) was met with heavy sanction practice.

h. In the end, there is no disputing the fact that insider, some of whom are currently under investigation for fraud by Federal government, ended up controlling the very hospital from which they are accused of stealing millions of dollars.  And while certain actors freely manipulated the federal and state judicial system,  others were foreclosed from getting relief because they suspected foul play but could not prove it early on, and by the time evidence of foul play surfaced, they were deemed too late to seek relief, leaving a 60(d)(3) motion as the only viable alternative which could grant relief.

The impropriety of the misrepresentations may never have surfaced, if it weren't for the fact that perpetrators got brazen enough to seek additional money in state court, where it was finally discovered (and ruled upon by the 333rd district court) that CISH never became legal owner of the note. Lastly, appellants relied on *Ehrenberg v. Roussos (In re Roussos)*, 541 B.R. 721 (Bankr. C.D. Cal. 2015) as a compelling authority that in case of fraud, a sale order may be reversed even after a decade.

Appellants argue that the details of factual contentions supported a reasonable conclusion and belief on there is a meritorious case for seeking vacatur of the sale order and a good faith reason to believe that the confirmation order could similarly be vacated by arguing a change in the existing law.  There has been a recent case supported vacating the sale order in *Ehrenberg v.*

*Roussos (In re Roussos)*, 541 B.R. 721 (Bankr. C.D. Cal. 2015) almost 18 years after the sale

occurred. Supreme Court's recent rulings, (*Rotkiske v. Klemm, No. 18-328 (U.S.).* ) where the

*Court declined to decide whether equitable principles might still justify tolling the limitations*

*period in exceptional cases, like those involving fraud, because the Petitioner did not preserve*

*that argument,* and the dissent, open the possibility that under the right circumstances, a Court

should consider equitable relief when relief was foreclosed by statute, such as statute of

limitations. Federal Rule 1144 is a form of statute of limitations. In another recent case, the

Supreme Court, reversing the Fifth Circuit (*Husky Int'l Electronics, Inc. v. Ritz*) declined to

define fraud in a precise formulaic way to avoid creating a blue print for committing fraud, and

the 180-day hard limitation of 1144  is similar in concept, giving a free pass to fraudster, if they

succeed in hiding the fraud on the court for 180 days after a confirmation order is signed.

## G.  OKIN ADAMS was erroneously granted sanctions against Appellants.

Okin Adams was erroneously granted sanctions against the appellants by the bankruptcy court,

even though it was not a party to the case. While Okin Adams was named twice in the motion, it

was not designated as a perpetrator of fraud. There were certain questionable acts on part of Okin

Adams that were facilitative to the fraud and other misrepresentations to the Court and without

further discovery their complicity or lack of it could not be determined.  Since there were no prior

claims against  Okin Adams in this case, it not could possibly have been subject to res judicata, as

there never has been any adjudication on any claims against Okin Adams between these parties, and

Appellants made observations of questionable acts on part of Okin Adams in their motion.  The only

conduct appellants accused Okin Adams of was that they, as counsels to receiver, misapplied the

AETNA claim for confirming the plan, and that they wrongfully asserted trustee's  exclusive right

to litigate all claims of the debtor long after the trust expired and long after the trustee had lost

authority under the terms of the trust. Both of these actions are well documented in the court's records, and can't possibly be used to impose sanctions under Rule 11, as they are not frivolous; rather, they are true documented parts of the record, appellants statements on their conduct are privileged and not subject to sanctions.

## CONCLUSION AND RELIEF SOUGHT

The Bankruptcy Court abused its discretion in assessing sanctions against the appellants under Rule 9011(b)(2) without a hearing. Court also abused its discretion when it sanctioned Appellants when appellants advanced claims supported by the facts and existing law, and for which there is reasonable justification for extending existing law. The Bankruptcy Court also abused its discretion by assessing sanctions under Rule 9011(b)(2) based on the erroneous conclusion that appellants brought claims previously rejected by the Court. None of the claims asserted had previously been presented to the Court. Therefore, the Bankruptcy Court abused its discretion when it assessed sanctions against the appellants under Rule 9011 for pursuing claims that were not precluded by res judicata. Finally, the Bankruptcy Court abused its discretion when it assessed sanctions against the appellants under Rule 9011(b)(3) when appellants counsel signed the motion to vacate for a proper purpose. On this record, appellant Azhar Chaudhary, an officer of this Court, acted with due diligence before he filed the motion to vacate. Judge Bohm, a respected member of our judiciary predicted that a motion to vacate might be necessary to avoid a fraud on the bankruptcy court. Finally, appellants contend that Okin Adams was not a proper party to invoke sanctions against the appellants, the bankruptcy court abused its discretion when it assessed sanctions against the appellants at the request of Okin Adams. The appellants pray the Honorable Court will reverse the Bankruptcy Court's order dated 04/15/2022, ECF Doc. No. 1174 issuing sanctions against Appellants.

*/s/Azhar M. Chaudhary*
Azhar M. Chaudhary
Azhar Chaudhary Law Firm, P.C.
440 Louisiana Street
Suite 948
Houston, Texas 77002
Telephone: 281.265.1010
Fax: 281.265.1011
attorney@chaudharyjd.com
Texas Bar No.: 24082804

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2022, a true and correct copy of the foregoing document has been served via the Court's CM/ECF system.

By: */s/ Azhar M. Chaudhary*
Azhar M. Chaudhary