UNITED STATES DISTRICT COURT      SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas

**ENTERED**

August 15, 2022

Nathan Ochsner, Clerk

| | | |
|---|---|---|
| Camil Kriet, *et al.*, | § | |
| | § | |
| Appellants, | § | |
| | § | |
| *versus* | § | Civil Action H-22-1408 |
| | § | |
| Claro Group, LLC, *et al.*, | § | |
| | § | |
| Appellees. | § | |

| | | |
|---|---|---|
| *In re* | § | Bankruptcy 14-34974 |
| Cleveland Imaging & Surgical | § | |
| Hospital, L.L.C., | § | |
| | § | |
| Debtor. | § | |

## Opinion on Appeal

1.    *Background.*

The court will not recap every salient detail in this nearly decade long bankruptcy. It will try to cover the pertinent facts necessary to understand this appeal.

In August and September 2021, over five years after the bankruptcy court confirmed the Chapter 11 plan, Camil Kreit, Fadi Ghanem, and Samir Kreit – through their attorney Azhar Mahmood Chaudhary – moved to vacate the order that authorized the sale of the debtor's assets and confirmed the plan. The appellants asserted that order was obtained through a "massive fraud" to sell assets to insiders at a reduced price.

The appellants claimed that: (a) the former directors caused a receiver to be appointed who instituted the bankruptcy; (b) the directors schemed with CISH Acquisition's counsel to have CISH take possession of a note that secured the debtor's assets – using that note to acquire the assets; and (c) the debtor and its

counsel – Okin Adams – created a false bankruptcy claim from Aetna, so the Chapter 11 plan would be confirmed. They essentially accuse every human being and corporation involved of fraud.

Ghanem and the Kriets have raised similar claims and accussations – through Chaudhary and other attorneys – many times in the bankruptcy and on appeal. Each time the bankruptcy court has repudiated these accusations and sanctioned them a handful of times for their conduct. 15 separate attempts to appeal these rejections of their accusations have been fruitless.

Claro Group, LLC, CISH Acquisition, LLC, and Okin Adams, LLP, moved for sanctions in response arguing that: (a) the vacatur motion was precluded by the bankruptcy court's prior rulings; (b) 11 U.S.C. § 1144 barred the motion; and (c) the motion was unsupported.

After the appellees filed their initial sanctions motions in response to the vacatur motion, the appellants did not respond. The bankruptcy court then ordered the sanctions motions be re-filed to purport with the rules and gave additional time to the appellants – to either correct their conduct or otherwise respond to the motions.

Instead of withdrawing the vacatur motion within the safe-harbor period, the appellants defended their conduct in a response to the sanctions motions on February 15, 2022.

On March 7, 2022, the bankruptcy court found the appellants' conduct sanctionable in a thorough and extensive opinion.

On April 15, 2022, the bankruptcy court held a hearing to determine the amount of the sanctions and gave the appellants a full opportunity to ameliorate their sanctions – having suggested apologizing, withdrawing their accusations, and others. At the hearing, rather than apologize for their allegations, the appellants tripled down on their assertions and essentially only apologized for people being offended by being called fraudsters. The bankruptcy court ultimately ordered sanctions that the appellants:

(a)     pay roughly $140,000 to appellees jointly and severally;

(b)     are enjoined from challenging the sale order in any way anywhere;

(c)     are enjoined from interfering with CISH's control of the assets; and

(d)     pay an additional $140,000 into the court's registry to serve as a fund to ensure that any future sanctionable conduct could be paid.

On April 29, 2022, the Kriets and Chaudhary appealed their sanctions.

2.      *Standard of Review.*

This court reviews the bankruptcy court's conclusions of law and of mixed law and fact *de novo.*[1] Findings of fact are reviewed for clear error.[2] The bankruptcy court's choice of sanctions are reviewed for an abuse of discretion.[3]

3.      *Preliminary Matters.*

The court would be remise not to address some concerns that it has noticed with the appellants' appeal. First, the appellants have improperly raised certain issues on appeal. An obvious example was not highlighting its concerns with Okin Adams's standing in its notice of appeal but spending a sizable chunk of its appellate brief on the issue. Improperly arguing issues that it failed to raise before circumvents the entire appellate process.[4]

---

[1] *ASARCO, Inc. v. Elliot Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011).

[2] *U.S. Dept. of Educ. v. Gerbardt (In re Gerbardt)*, 348 F.3d 89, 91 (5th Cir. 2005).

[3] *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

[4] *See Rollins v. Home Depot*, 8 F.4th 373, 397 (5th Cir. 2021).

The next concern is the blatant shortcomings in the appellants' process in this appeal. They have designated the *entire 23,000 page* bankruptcy docket as the appellate record. This is drastically over-broad.[5] It can barely be called a designation because nothing was actually designated.

The appellants also do not even cite to their own appellate record. They have forced this court to hunt for clues like it is Nicholas Cage in *National Treasure*.

The appellants also holistically failed to follow the basic procedures with its brief under bankruptcy rule 8014(a). They did not include a jurisdictional statement, table of contents, and table of authorities – to name a few.

The final concern the court feels obligated to mention that no stay has been granted, but the appellants have not complied with the sanctions order that they have appealed.

4.     *Bankruptcy Appeal.*

The appellants raise seven issues on appeal – covering three larger categories:

    A.     *Notice and Hearing.*

The appellants say that the bankruptcy court abused its discretion when it imposed sanctions without a hearing on their vacatur motion. They insist that the court violated their due process rights because they "were given no opportunity to present their evidence (or develop evidence through discovery) to demonstrate the merits of their [vacatur] motion before the court decided that sanctions were forthcoming." The appellants then list the "merits" arguments they would have litigated.

---

[5] *In re Wynn*, 122 B.R. 9 (N.D.T.X. 1990).

The bankruptcy court may impose appropriate sanctions after giving "notice and a reasonable opportunity to respond."[6]

After failing to respond to the first round of sanctions motions, the bankruptcy court ordered the appellees to re-file their motions and gave the appellants a second opportunity to respond. The appellants had plenty of time to respond to the sanctions motions, or otherwise correct their conduct, and – in fact – gave a lengthy response.

The appellants attempt to rely on two cases – *Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir. 1999) and *Martin v. Moody Nat'l Bank, N.A.*, 533 F.3d 374, 378-79 (5th Cir. 2008) – for their argument that an evidentiary hearing is required before sanctions may be imposed. The "propositions" that the appellants pull from these cases are selective and overly narrow. Reading the full paragraph in both cases explains that all that is required is a opportunity to be heard and that, while a hearing is one avenue, it is not mandatory. This sort of blatant misreading of the law is offensive to the legal profession.

The hearing that the appellants seem so impassioned that they were denied was not a hearing on the sanctions motions but a hearing on their vacatur motion. This is the wrong focus of the analysis. Additionally, as will be explained later in this opinion, the record was clear and no legitimate facts were in the dispute. No evidentiary hearing was needed and holding one would have been a drastic waste of resources.

The appellants had fair notice and more than a reasonable opportunity to respond to the sanctions motions.

---

[6] Fed. Rule Bankr. P. 9011(c); *see also Merriman v. Sec. Ins. Co. of Hartford*, 100 F.3d 1187, 1192 (5th Cir. 1996); *BFG Inv., LLC v. Tex. State Bank (In re TBYRD Enters., LLC)*, 2007 WL 4241705, at *4 (Bankr. S.D.T.X. 2007); *Formador, Inc. v. Franco (In re Franco)*, 610 B.R. 163, 172 (Bankr. D. Puerto Rico 2019).

B.      *No Sanctionable Conduct.*

Federal Rule of Bankruptcy Procedure 9011 governs sanctions. Rule 9011(b) states that:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney ... is certifying to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1)   it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2)   the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3)   the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

The signatory's conduct is assessed objectively under the circumstances – not based on the subjective good faith of the attorney.[7] Factors that this court may consider when determining the reasonableness of the inquiry include: (a) the time available for investigating; (b) the extent the clients are relied upon for facts

---

[7] *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 528 (5th Cir. 2016); *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 873 (5th Cir. 1988).

in support; (c) the feasibility of investigating pre-filing; (d) the complexity of the issues; and (e) the extent discovery is needed to develop the facts.[8]

Rule 9011(c) allows for sanctions when 9011(b) is violated by advancing arguments without support in or a reasonable extension of existing law.[9]

1.     *Claims Reasonably Supported by Law.*

The appellants say that sanctions were not warranted because the claims in their vacatur motion were "supported by existing law" or a "reasonable justification for extending existing law" existed. They generally state the potential to change existing law and that the Supreme Court "effectively left the door open for consideration of certain perpetrated frauds against the Court (as opposed to general cause of action fraud)."

The appellants refer to 18 cases that they say support their claims:

(1)     *Valerio v. Boise Cascade Corp.*, 645 F.2d 699 (9th Cir. 1981);

(2)     *Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir. 1978);

(3)     *Jackson v. Thaler*, 348 Fed. Appx. 29 (5th Cir. 2009);

(4)     *Wilson v. Johns-Manville Sales Corp.*, 873 F.2d 869 (5th Cir. 1989);

(5)     *Universal Oil Products Co. v. Root Fe. Co.*, 328 U.S. 575 (1946);

(6)     *United States v. Estate of Stonehill*, 660 F.3d 415 (9th Cir. 2011);

(7)     *Buckenberger v. Nielsen*, 2015 WL 5061373 (E.D.L.A. 2015);

(8)     *Martina Theatre Corp. v. Schine Chain Theater, Inc.*, 278 F.2d 798 (2d Cir. 1960);

(9)     *Bulloch v. United States*, 721 F.2d 713 (10th Cir. 1983);

(10)    *Robinson v. Audi Atiengessellschaft*, 56 F.3d 1259 (10th Cir. 1995);

(11)    *Haze-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944);

---

[8] *Smith v. Our Lady of the Lake Hospital, Inc.*, 960 F.2d 439, 444 (5th Cir. 1992).

[9] *M2 Tech., Inc. v. M2 Software, Inc.*, 748 Fed. Appx. 588, 590 (5th Cir. 2018).

(12) *Estate of Adams v. Fallini*, CV NO. 24539 (Nev. 5 Dist. Ct. 2014);

(13) *In re Cardwell*, 2017 WL 2304220 (Bankr. E.D.T.X. 2017);

(14) *In re Clinton Street Food Corp.*, 254 B.R. 523 (Bankr. S.D.N.Y. 2000);

(15) *H.K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115 (6th Cir. 1976);

(16) *Ehrenberg v. Roussos (In re Roussos)*, 541 B.R. 721 (Bankr. C.D.C.A. 2015);

(17) *Rotkiske v. Klemm*, 140 S. Ct. 355 (2019); and

(18) *Husky Int'l Electronics, Inc. v. Ritz*, 578 U.S. 356 (2016).

While never explicitly stated, the appellants spend most of their arguing this issue by challenging the timeliness of their vacatur motion -- and later sporadically address this point in some of their other sections. They contend that a rule 60(d)(3) fraud on the court motion does not have an time limit and may be raised at any time.

The appellants' vacatur motion challenged the order confirming the debtor's reorganization plan. Bankruptcy Code section 1144 only allows for the revoking of the plan for fraud, and relief must be sought within 180 days.[10] The plan was confirmed on June 29, 2016. The appellants filed their first vacatur motion on August 17, 2021 – nearly 1,700 days after the deadline.

The appellants largely attempt to argue that rule 60(d)(3) motions are not subject to this 180-day limit. Rule 60(d)(3) says that, "[Rule 60] does not limit a court's power to ... set aside a judgment for fraud on the court." Federal Rule of Civil Procedure 60 is incorporated into bankruptcy proceedings under rule 9024. Rule 9024, however, is also explicitly clear: "a complaint to revoke an order confirming a plan may be filed only within the time allowed under §1144." This time limit is strictly enforced.[11]

---

[10] 11 U.S.C. § 1144.

[11] *See In re Apex Long Term Acute Care - Katy, L.P.*, 599 B.R. 314, 322 (Bankr. S.D.T.X. 2019).

All of the cases that the appellants cite in support of their rule 60(d)(3) timeliness argument are completely inapplicable. They: (a) attempt to apply 60(b) standards, (b) are a selected picking of generalized and meaningless propositions, (c) have been largely called into question by higher courts, (d) have been vacated on appeal, and (e) do not concern bankruptcy proceedings – so the limitations of section 1144 do not apply.

The appellants' argument would clearly run contrary to the express language of section 1144. This substantive limitation on the court's authority unequivocally forecloses the appellants' assertion.[12] Any lawyer should have known that these claims were expressly foreclosed.

The appellants offer no reasonable or coherent argument that their claims are supported by existing law or a reasonable extension or change in the law, so their conduct was clearly sanctionable.

2. *Claim Presented for First Time.*

The appellants argue that their claim that "CISH commenced a fraud upon the court by failing to admit that CISH never acquired title to the note" was "presented to the court for the first time" in their vacatur motion. They assert that the 333rd District Court in Harris County ruled on this issue previously.

As another re-hashing of the appellants' long-dead allegations of impropriety in the sale of the debtor's assets – which have been unequivocally rejected by the bankruptcy court – the appellants attempt to re-frame this argument as a "new claim." The record makes clear that this is nothing more than half-hearted obfuscating.

The appellants assert that the ruling in the 333rd District Court proves that CISH's attorney should have known that his client did not have the right to credit bid on the debtor's assets. This court is not sure what ruling the appellants are reading to come to the conclusion that they are, but the 333rd

---

[12] *See Rules Enabling Act*, 28 U.S.C. § 2072; *United States v. Sherwood*, 312 U.S. 584, 589-90 (1941).

District Court merely decided a question of jurisdiction on a no-evidence motion. The state court decision did not concern nor touch any of the issues that the appellants argue.

Even if the court were to believe CISH's attorney did not affirmative disclose the 2017 state court decision, the appellants offer no legal authority that this would rise to the high level of "fraud on the court."

Continuing to argue previously rejected claims – no matter how they may be re-framed – is clearly sanctionable conduct under rule 9011(b).

### 3.    Not Previously Litigated or Res Judicata.

The appellants say that they did not engage in sanctionable conduct because their claim was not previously litigated or barred by *res judicata*. They insist that an orchestrated series of bankruptcy schedules were manipulated to create a false insolvency. The appellants also assert that a $8.5 million Aetna claim was improperly used to approve the plan. They finally argue that *res judicata* yields to a rule 60(d)(3) fraud on the court claim.

Claims that are barred by *res judicata* are typically considered to lack support in existing law in the rule 9011 context.[13]

The appellants rely word-for-word on a paragraph in *Turner v. Pleasant*, 663 F.3d 770, 776 (5th Cir. 2011) – and the cases cited in that paragraph, *United States v. Beggerly*, 524 U.S. 38, 45-46 (1998), and *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) – to assert that "res judicata may yield, even in cases that invoke 60(b)(3)."

It is clear that *res judicata* applies to the overarching fraud allegations: in initiating the bankruptcy proceedings, in appointing the receiver, and in selling the debtor's assets. The bankruptcy court has rejected these many times, and the appellants offer no explanation for their disregard of these prior rulings. The appellants had the opportunity to challenge these rulings at the time, chose not to, and are precluded from doing so now.

---

[13] *See Fermin v. Nat'l Home Life Assurance Co.*, 15 F.3d 180 (5th Cir. 1994).

If the court were to accept the premise that fraud on the court would override *res judicata*, the appellants would still have had to have pleaded a valid motion under rule 60(d). They have failed. A fraud on the court motion only applies to the most egregious of conduct and must "show an unconscionable plan or scheme which is designed to improperly influence the court in its decision" by clear and convincing evidence.[14]

While the appellants made a laundry list of allegations in support of its motion, the bankruptcy court efficiently highlighted the most serious accusations that they made:

(a)   the debtor's receiver committing or facilitating fraud;

(b)   the debtor's bankruptcy was a sham so that insiders could acquire assets and cover-up wrongdoing;

(c)   CISH's attorney failing to disclose his client's lack of ownership over a note used to purchase the debtor's assets;

(d)   Iberia Bank colluding to force the receiver's appointment and to start the sham bankruptcy; and

(e)   the insiders – through their attorney – misrepresented Aetna's claim to secure the plan's confirmation.

All of the allegations laid out by the appellants in their vacatur motion are entirely unsupported by the facts and have no evidentiary support. They read more like a Hollywood script than a legitimate filing in federal court. What the record clearly shows is a long history of the appellants disagreeing with decisions by the receiver and the bankruptcy court. Instead of accepting these decisions, the appellants have fallen into a destructive pattern of fantasizing conspiracy after conspiracy to explain their losses. It is beyond time for the appellants to grow up, face reality, and move on with their lives.

Because their motion is entirely baseless, and it would not trump *res judicata*, the appellants engaged in sanctionable conduct.

---

[14] *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1337-39 (5th Cir. 1978).

4.      *Objectively Reasonable Inquiry.*

Chaudhary says that he conducted an objectively reasonable inquiry before signing and filing the vacatur motion. He points to his affidavit with the motions where he says that he "explain[ed] in excruciation detail the investigation and verification of factual allegations that he made." He claims that his investigation involved:

(a)     speaking with his clients;

(b)     "evaluated" hundreds of filings in the disputed matters; and

(c)     reviewed his clients emails, a forensic audit, party admissions, inquiries from other professionals, affidavits, testimony, and countless documents.


For purposes of his argument, the court will accept the notion that Chaudhary investigated and potentially spent a considerable amount of time doing it. The failing point in this argument, however, is that, while Chaudhary may believe that he conducted a reasonable investigation, the record shows otherwise. The test for this court is not a subjectively reasonable investigation but an objective one.

Looking to the factors for determining the reasonableness of the injury only further reveals how objectively unsound Chaudhary's investigation was. Chaudhary may have been relatively new to the case, but he had over six months from the time he was hired to acquaint himself with the case before he filed the motion. This is more than sufficient time for him to have conducted a proper investigation. While Chaudhary may be allowed to rely on his clients, this is not an absolute. As said above, he had over six months to consult the record and verify what his clients were telling him about the case. Just because he then drank the kool-aid his clients gave him, it does not absolve him of liability for sanctions.

Pre-filing investigating was more than feasible as extensive discovery had been done in the bankruptcy. Chaudhary had all of the facts and evidence available to him to have known the vacatur motion was fruitless, and no further

discovery could have been done to change that outcome. While Chaudhary may have thought the issues were complex, they were in fact quite straight forward and simple – had it been more than 180 days since the plan was confirmed. That is nothing more than elementary math.

Because Chaudhary did not conduct an objectively reasonable investigation, he is subject to sanctions under rule 9011(b).

5.      *No Improper Purpose.*

The appellants say that the bankruptcy court improperly sanctioned them because they filed their vacatur motion for a proper purpose. They insist that the bankruptcy court only claimed its frustration with the appellants' many appeals as reason for sanctions, and that this is insufficient to justify sanctions. The appellants say that the focus should only be on the current vacatur motion, and they did not file it for any improper purpose. Chaudhary refers to another of his affidavits which he says shows his good faith purpose in filing the motion by listing the "legal and factual basis" for his motion.

A self-serving statement by Chaudhary that he did not file the vacatur motion for an improper purpose is completely inadequate to avoid sanctions. As explained in the sections above, the appellants conduct was clearly improper. It is completely unfounded in law and fact. The allegations made were clearly harassing as the motion made scandalous accusations about other attorneys and officers of the court. Our system requires civility and that was breached to its highest degree. This point is only driven home by the clear lack of remorse by the appellants. Having been shown that their claims were baseless and then given the opportunity to apologize for their conduct, the appellants instead chose to triple-down on their defamatory claims.

The appellants conduct also did – and has – needlessly driven up the costs of litigations and delayed the bankruptcy for *years*.

Because the vacatur motion was filed for many improper purposes, the bankruptcy court properly imposed sanctions.

### C.    *Okin Adams Improperly Granted Sanctions.*

The appellants say that the bankruptcy court erroneously awarded Okin Adams their costs and fees under the sanctions because it was not a party. They also insists that it "was named twice in the motion" but "was not designated as a perpetrator of fraud." The appellants argue that, because their accusations against Okin Adams were in the record, they are privileged and cannot form the basis for sanctions.

First, the appellants offer no legal support for the proposition that accusations stemming from the record are privileged and cannot be the basis for sanctions. As explained above, the appellants misguided belief that their accusations are reasonably supported by the record is exactly the conduct that has led to their sanctions.

The appellants argument that Okin Adams would not have standing because they were not explicitly called a perpetrator of fraud and were only "named twice" is equally facetious. In reading the vacatur motion, it is clear that the appellants asserted that Okin Adams was a part of the fraud. Imposing a minimum times to name as a requirement would eradicate sanctions from federal practice.

Okin Adams need not be a party to have standing for sanctions. As a priority creditor of the confirmation plan – the exact plan that the appellants were attempting to vacate – Okin Adams's interests were directly linked and impacted. This is more than sufficient to give it standing to pursue sanctions.[15]

Because Okin Adams had standing, the bankruptcy court did not err in awarding it their costs and fees under the sanctions.

---

[15] *In re Enron Corp.*, 2004 Bankr. LEXIS 2549, at \*253-54 (Bankr. S.D.N.Y. July 15, 2004).

5.   *Conclusion.*

The bankruptcy court will be affirmed.


Signed on August ⟋⟋⟍⟍⟍⟍ , 2022, at Houston, Texas.




_____
Lynn N. Hughes
United States District Judge